FRUGÉ, Judge.
This is a suit for cost of repairs allegedly made to defendant John Aaron’s home heating system.
Defendant John Aaron’s home is located in Natchitoches, Louisiana. It is approximately three years old. It is centrally heated by a Carrier Air Conditioning Unit. In March of 1962, defendant Aaron contacted the plaintiff, a wholesaler of Carrier units, complaining that the heating system would not work properly when the outside temperature dropped below 40 degrees. Defendant called on the plaintiff for help because the general contractor of the house had failed to correct the difficulty and defendant’s children were sick and his house was cold. Although the plaintiff had originally sold the unit to the subcontractor for installation in defendant’s house, it was in no way responsible for the unit since it had not installed it and the warranty had expired. Nevertheless, plaintiff agreed to help the defendant with his problem. Plaintiff contacted Mr. Cotten of Air Conditioning of Shreveport, Inc., who agreed to go to Aaron’s home to make the necessary repairs. Plaintiff sent its service consultant, Mr. Treadway, to assist Mr. Cotten in making the repairs. Treadway and Cotten worked for about three days on the system; at the end of that time they felt that the unit was operating properly. A few days later plaintiff sent defendant Aaron a bill for $510.30 for the repair bill. Defendant Aaron refused to pay.
Plaintiff brought suit for the amount of the repair bill. Defendant Aaron called his general contractor, Cryel Dickson, and Dickson’s subcontractor, Brooks Brothers, as third party defendants, alleging them responsible for the repair debt in the event he was held liable. The general contractor, Cryel Dickson, in his answer to the third party demand, made a third party demand against Brooks Brothers, alleging that Brooks Brothers was responsible for the debt in the event he was held liable. The trial court rendered judgment for the plaintiff against the defendant John Aaron in the amount of $510.30. It rendered a judgment for the same amount in favor of defendant Aaron against Cryel Dickson. It also rendered a judgment for the same amount in favor of Cryel Dickson against George Brooks, John Brooks and Brooks Brothers. From this judgment, the defend *388 ant John Aaron and third party defendant Cryel Dickson appeal.
Appellants contend that Aaron is not indebted to the plaintiff because the repair work was so defective, worthless and useless for its intended purpose as to amount to a failure of consideration. Appellants argue that there was failure of consideration because the plaintiff agreed to correct all of the defects in the heating system and did not do so. The record shows that the testimony is conflicting as to whether or not there was such an agreement. Evidently, the trial judge concluded that no such agreement had taken place. We cannot say that such a conclusion was manifestly erroneous. It appears that the cause of the defendant’s trouble was poor installation on the part of Brooks Brothers, the subcontractor which installed the unit. The record shows that there were large spaces open in the joints of the duct work. The unit was pulling air from the attic, resulting in a large amount of cold air being blown through the ducts in winter. The coils were dirty, reducing the efficiency of the unit. Further, the compressor was located in an unsuitable location, causing poor circulation. All of these conditions were responsible for the defendant’s not having heat when the outside temperature was below 40 degrees. The record shows no agreement, either express or implied, between the plaintiff and the defendant for this type of repair work. Defendant relies heavily on the testimony of plaintiff’s President, Mr. Hungerford, to the effect that if he had gone down to defendant’s house himself, he would have told defendant of these defects. Possibly Mr. Hungerford would have done so. The record shows that Mr. Hungerford was an application engineer. However, he sent servicemen to repair the unit. The record clearly indicates that the understanding between the plaintiff and defendant was that the unit itself needed servicing. There was no duty on the part of Mr. Hungerford to go to the defendant’s home and advise him as to the errors made by the subcontractor in installing the unit when the house was constructed. Mr. Hungerford stated that he would have done so had the defendant asked him. But the defendant did not make such a request. The work was performed in March of 1962 and the case was brought to trial in December of 1962. During that time the defendant made no complaint about the work performed on his unit. The examination of the system by Hungerford in August was at his own request because of the possibility of litigation. After that time defendant was aware of the basic defects in his system, but still did not contact the plaintiff.
Whether or not the work to the unit itself was necessary or defective is a question of fact. Although we have no written reasons for the trial judge’s decision, he must have concluded that the work was necessary and not defective. The record shows that the two repairmen stayed on the job over a period of three days. They did considerable work on the heating system. It appears that they were qualified and were going about their work in a satisfactory manner. After performing the repairs, the repairmen thoroughly tested the system and found it to be in good working condition. Because of these factors, we conclude that the work on the unit was needed and not defective.
The third party defendant contends that the charge for the repairs was excessive. He argues that $100 would be a sufficient amount. The record shows that the repairmen worked for 23 hours of regular time and 17 hours overtime. They were required to make three round trips from Shreveport to Natchitoches. They had to disconnect all the control wires and connect them on the proper thermostat terminals. They flushed the trash out of the system and put new dryers in it. They replaced two valves, two relays, the high condensing pressure cutout control, the capacitators on the compressor, a clixon, and two Sporlan Catchalls. 31 pounds of refrigerant were used to clean the system and 20 pounds were used for final charging. Considering all of *389 these facts and the fact that these men were skilled workers, we do not find that the charge of $510.30 for these services was excessive.
For the foregoing reasons, the judgment of the district court is affirmed, with costs of this appeal assessed to appellants.
Affirmed.